## Strode v. Commonwealth.

Feb. 26, 1946.

Hines & Hines and Paul Carter for appellant.

Eldon S. Dummit, Attorney General, and Forest House, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant was charged by indictment with having assaulted and robbed one Horace Jenkins, and in using in commission of the offense a knife, an offensive weapon, a crime denounced by section 433.150, KRS, which fixes the penalty at imprisonment for twenty-one years or death. Appellant was found guilty and his punishment fixed at twenty-one years imprisonment. On appeal it is contended in briefs in behalf of appellant that the court committed prejudicial errors: (1) In overruling demurrer to the indictment; (2) admitting incompetent evidence; (3) in denying request for peremptory; (4) in the giving of instructions, and finally that the judgment should be reversed because of misconduct of the commonwealth's attorney in the closing argument.

We shall dispose of technical ground 1. The demurrer was based on the ground that the indictment did not state the date on which the offense was committed. It did allege that it was committed before the finding of the indictment. This complied with section 129 of the Criminal Code of Practice; the time of commission was not a material ingredient of the offense charged. Evitts v. Commonwealth, 257 Ky. 586, 78 S. W. 2d 798. Determination of other questions will depend upon the proof.

On the 18th of January, 1945, Jenkins, a farmer, testified that he was driving through Bowling Green on the way to Smith's Grove. Strode, in company with a woman companion, thumbed for a ride and Jenkins picked them up. After driving for some distance Strode produced a bottle of liquor, and he and his companion

took a drink, Jenkins refusing to join them; a little later Strode demanded that Jenkins pull his car to the left, he refusing because of the condition of the road. Strode then demanded that Jenkins stop and get out, which he did. The two guests then took another drink, insisting with some vehemence that Jenkins join them, but he declined. He then said that as he started to go back to the car Strode struck him on the head with a bottle, knocked him down, struck him in the chest with a knife, demanding money and took twenty dollars and his car keys. They indulged in some sharp scuffling; Jenkins was cut again, and Strode said, "I will send a doctor," and got in the car and drove off. Some stranger took Jenkins into town. His car was recovered in a few days, but some articles which Jenkins had in it were missing.

On cross-examination he stated positively that Strode was the person who assaulted him, and that he did not take a drink. Strode was arrested in Chattanooga, and on the way back to Bowling Green asked the officer if "the fellow was dead," and the officer asked "What fellow?" and he replied "that fellow I am arrested for." He also stated that he and his companion were drunk, and he "didn't know what happened." Other witnesses testified as to Jenkins' condition when found on the highway and brought to the clinic. Dr. Newman testified as to Jenkins' injuries. He found a stab near the heart; cut on his left hand, and one on the right side.

Strode testified that on the morning of the 18th he went to his draft board in Tompkinsville for reenlistment. He came back to Bowling Green and met Lettie Huntsman in a restaurant. They drank some beer. He also drank some whisky from a half pint bottle, and "some fellow walked in and asked me could he have a drink, and I gave him a drink. He asked me, 'who is your girl friend?' and I said 'I just met her;' he said, 'Well, let's go out and have a good time.' " Strode then told Jenkins that he had no car, and Jenkins replied that he had a car but he was broke. Strode replied that he had about $8. Jenkins then agreed that he would furnish the car if Strode would buy some whisky. The three then went to the car, and Strode went to a "whisky joint" and bought a fifth of whisky. They all got in the car and drove out of town, and the bottle was opened and each of the three took a drink. They drove for

a while and all took another drink. They drove still farther and Strode asked the driver to stop, and he got out and went to the roadside for a natural purpose. When he came back to the car "this man was trying to put his arms around the girl." Strode said he told him, "Buddy lay off my girl; that's mine." The man replied, "No, we are all out together, it's as much mine as yours." "The man said something else and I pushed him back; he come at me with a knife and I hit him beside the head with that whisky bottle. He came at me again. I made for him and took the knife away from him, cut him and threw the knife away." Strode identified Jenkins as "the man," but denied that he had demanded of or took any money from Jenkins; he said that he had about $60 of his own at the time. He said they were all drinking, but he was sober enough to know what he was doing; he thought "Jenkins was drunker than I was, and the girl was pretty full." He denied that he took Jenkins' car keys, but said that he gave him the keys and told him to go get a doctor. He admitted that he did not get the doctor, and being "unacquainted with the road I wound up in Glasgow." He insists that all the trouble arose over Jenkins' attention to the girl. He left the Jenkins' car at Tompkinsville and told some man he did not know, but who was going to Bowling Green, to take the car back.

Sherill, the restaurant keeper, said he knew Jenkins, who came in sometimes to drink a coca-cola, but he could not say that he was in his place on the 18th. The girl testified that Strode went out of the restaurant and said he had made arrangements for a ride, and they were to meet the man (she identified him as Jenkins). Her testimony makes it manifest that on the occasion in question she was pretty well "lit up," or had a notoriously defective memory. She did remember getting in the car and driving a short distance, but "the only thing I remember is that we all got out of the car, and there was an embankment there and we walked up this embankment and Floyd took a drink and I did. I don't know about the man over there whether he did or not. Then we walked on up this hill, and they were talking; it sounded like they were arguing; I turned around and walked down the hill, and was standing by the car and what happened I don't know; I don't know what they were arguing about." The only testimony

favorable to appellant was that she did not see Strode with a knife.

On cross-examination she said Jenkins did not mistreat her, or make advances, or if he did she did not remember. She did not know Jenkins was hurt, but did remember that Strode came back with the car keys and said, "Let's go." They drove toward Glasgow, but did not stop there, but took her to "some place in Tompkinsville," and from there hitch-hiked on to Nashville. When pressed she said that Strode had said something about getting some money from Jenkins, but did not remember exactly what was said, but he did have some money when they got to Nashville and gave her some of it. She remembered a little more on cross-examination than on direct, since when Strode came to the car with the keys, she asked, "Where is the man?" and he replied, "Come and get in the car and hush, and said something about getting a doctor."

Jenkins in rebuttal denied that he had stopped his car at the roadhouse; denied that he had approached the girl; that Strode made objections on that account; that he went into the restaurant, and said that he did not at any time that day or any other time drink any liquor or beer. He also denied positively that he made any suggestion to Strode that the three "go out and have a good time."

We shall briefly treat of the contentions that there was error in denying motion for a peremptory, and that the verdict is contrary to the law and evidence. On the first point, while on the motion for new trial it was stated as a ground that the court erred in overruling motion for a peremptory, a search of the record fails to show that any such motion was made either at the close of the commonwealth's or all the testimony; such motion is not shown either in the bill of exceptions proper, or the transcript of evidence. On that and the other point it is only necessary to say that our resume of the proof would readily lead to the conclusion that the evidence, though sharply conflicting was sufficient to take the case to the jury and to sustain the verdict.

In respect of instructions, it is only complained that the court failed to give an instruction on the offense denounced by section 433.120, KRS, robbery, for which the penalty is from two to ten years' imprisonment.

Conceding, but not concluding, that the crime of ordinary robbery may be a degree of the crime of assaulting with intent to rob, or robbery accompanied by the use of an offensive weapon, we cannot hold that the failure to instruct under the section, supra was error. While defendant admitted the assault, though claiming this was in his defense, he denied either demanding or taking any money from Jenkins. Under these circumstances, since his defense and his testimony did not present any theory upon which the crime or robbery could have been based, he was not entitled to such instruction. We note that the court was careful to give an assault and battery instruction, accompanied by one on the claim of self-defense, with all the "doubt" instructions authorized by law. Our conclusion of no error in the failure is based on our opinions in Elam v. Commonwealth, 273 Ky. 414, 116 S. W. 2d 981; Rowe v. Commonwealth, 283 Ky. 367, 141 S. W. 2d 284 and Gum v. Commonwealth, 291 Ky. 450, 165 S. W. 2d 21.

The objection to admission of alleged incompetent and prejudicial evidence is directed solely to a question asked Strode on cross-examination, in relation to his military status. Strode's claim was that having been discharged he was seeking reenlistment. On cross-examination he was asked, "Weren't you discharged dishonorably?" and he answered "No." After he had replied the court sustained objection, and appellant again said that it was not true. After some colloquy between counsel the court told the jury not to consider it, "I sustain the objection." Later appellant was asked, "Were you discharged for disability or misbehavior?" followed by objection, the court not ruling, and appellant answered, "Well, I would not know about that." Counsel for appellant did not insist on a ruling on the last question or answer; after more colloquy the court said: "The man's character cannot be attacked until it is put in issue." While these questions were irrelevant, and should not have been asked, we cannot say, under the court's rulings, there was prejudicial error.

The final objection is to the alleged improper argument of the commonwealth's attorney. Notwithstanding, counsel for appellant does not say in brief what language the complaint was based upon, nor cite us to where it may be found in the record, we have located the only point of objection made while the argument was in

progress. The attorney was discussing the variance in Strode's defense evidence and former statements, and referred to the fact that when he was arrested he had told officers who asked him why he did it, "I had a lot of liquor in me and I don't know why I did it." The attorney said, "It wasn't a case then of him getting mad because somebody was putting his arms around his sweetie's neck. It wasn't that down here in the court below when we had it up. That just started today. That was the first time he ever said anything about it." The objection was, "I object to anything about the lower court because this man has never been on the witness stand in the lower court." The court admonished counsel to confine himself to the testimony, and counsel then corrected himself by saying, "Well he made the statement to the officers."

By examination of the record we find that on cross-examination of the arresting officer he had stated that Strode told him, "I was so drunk I don't know what happened." This objection is rather trivial. The only error the attorney made was by the implication that Strode had said in the lower (examining) court that he was so drunk he did not know what was done. The sole objection was to the reference to the court below. Counsel at once corrected the statement without further objection. We should have to go far afield under any opinion heretofore written to hold prejudicial error. A review of the entire record leads to the conclusion that the court afforded appellant a fair trial, free from prejudicial error.

Judgment affirmed.